UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 0:22-CV-61953-DIMITROULEAS/AUGUSTIN-BIRCH

**VINCENT TUCKER,**

    **Plaintiff,**

v.

**BLACKFISK MARINE, LLC
and JEAN TRAYNOR,**

    **Defendants.**
_____/

## REPORT AND RECOMMENDATION ON MOTION TO STAY

The Honorable William P. Dimitrouleas, United States District Judge, has referred this matter to the undersigned United States Magistrate Judge for appropriate disposition or report and recommendation on a Motion to Stay Pending Outcome of Ownership of Blackfisk Marine, LLC Which is Pending in State Court.[1]  DE 30 and 37.  The Motion to Stay is fully briefed, Plaintiff Vincent Tucker having filed a Response [DE 36] and Defendant Jean Traynor having filed a Reply [DE 41].  The Court has carefully considered the briefing and the record and is otherwise fully advised in the premises.  For the reasons set forth below, the Court recommends that the Motion to Stay be **DENIED**.

---

[1] In the same Order, Judge Dimitrouleas also referred for resolution "the issue of who represents Defendant Blackfisk Marine, LLC in this matter."  DE 37.  Judge Dimitrouleas referred this issue because two attorneys—Chris Kleppin and Benjamin Olive—had appeared purporting to represent Blackfisk Marine, and the two attorneys had taken contradictory legal positions in this case.  However, on January 11, 2023, this Court granted Attorney Kleppin's Unopposed Motion to Withdraw from Representation [DE 52] as to Blackfisk Marine, with Attorney Olive continuing as Blackfisk Marine's legal representative.  DE 66.  Therefore, at this time the issue of who represents Blackfisk Marine is resolved and the referral of that issue to this Court is moot.  Because Attorney Kleppin filed the Motion to Stay on behalf of both Defendants but has now withdrawn from representing Blackfisk Marine, the Court construes the Motion to Stay as being brought only by Defendant Jean Traynor.

## I. PROCEDURAL BACKGROUND

Tucker filed the Complaint in this case against Blackfisk Marine and Traynor on October 20, 2022.  DE 1.  Tucker alleges in the Complaint that Blackfisk Marine is a company that sells boats and that Traynor is a member of the company.  *Id.* ¶¶ 8-9.  Tucker and Traynor signed a Secured Promissory Note in August 2022 whereby Tucker agreed to loan Defendants $80,000 for the purposes of obtaining the release of at least 12 rigid inflatable boats ("RIBs") being held at a seaport and attending a boat show to sell the RIBs.  *Id.* ¶¶ 12, 18-19; DE 11-2 at 1-3.  Defendants were to use the proceeds from the RIBs' sale to repay the loan plus interest and a $5,000 loan origination fee by the end of September 2022.  DE 1 ¶ 19; DE 11-2 at 1.  Tucker and Traynor also entered into a Security Agreement providing that the collateral for the loan included the 12 RIBs and all of Blackfisk Marine's other "equipment, deposits, accounts, intangible rights (including intellectual property), inventory, supplies, and receivables."  DE 1 ¶¶ 18, 20, 26; DE 11-2 at 4-6.  Tucker made the loan to Defendants, but Defendants did not attend the boat show and then defaulted on the loan.  DE 1 ¶¶ 21, 23, 25.  As Counts I, II, and V of the Complaint, Tucker raises state claims against both Defendants for breach of contract, breach of the implied covenant of good faith and fair dealing, and fraud in the inducement.  As Counts III and IV, Tucker raises state claims against Blackfisk Marine alone for foreclosure of the security interest and replevin of the 12 RIBs.

Traynor's Motion to Stay seeks a stay of this case until a lawsuit pending in Broward County Circuit Court, *Traynor v. LoRusso*, Case No. CACE22016106, is resolved.  Traynor filed a Complaint in that state lawsuit against Blackfisk Marine, Michael LoRusso, and Clinton Cetti on October 27, 2022.  DE 30-1.  In the state Complaint, Traynor alleges that he created Blackfisk Marine in 2017 and, until September 2022, was the company's sole managing member.  *Id.* ¶¶ 13, 16.  Traynor and LoRusso agreed in March 2022 that LoRusso would invest $400,000 into

Blackfisk Marine in exchange for a 30% ownership interest in the company. *Id.* ¶ 20. In September 2022, LoRusso declared that he was Blackfisk Marine's managing member, filed documents to that effect, and had Traynor removed from the company's premises. *Id.* ¶¶ 21-22. Cetti is Blackfisk Marine's administrator and assisted LoRusso in taking control of the company. *Id.* ¶¶ 10, 27. The state Complaint raises 13 state-law counts that include breach of contract, fraud, defamation, and requests for equitable relief. The counts also include a claim for replevin of certain personal and business property, including numerous boats. *Id.* ¶¶ 55, 57-58, 98-99. Through the state lawsuit, Traynor seeks a determination that he is at minimum the 51%, if not 100%, owner of Blackfisk Marine. On December 6, 2022, Traynor filed a Notice of *Lis Pendens* in the state lawsuit that lists the property for which he seeks replevin. On December 30, 2022, Traynor filed an Amended Complaint in the state lawsuit listing Blackfisk Marine as a plaintiff, rather than as a defendant. The allegations in the Complaint are substantively unchanged in the Amended Complaint.

## II. ANALYSIS

Traynor now seeks a stay of this case pending the resolution of the state lawsuit and a determination as to Blackfisk Marine's rightful ownership. As an initial matter, Traynor contends that a district court has the inherent authority to stay a case in many circumstances. DE 30 at 3. Traynor further contends that Tucker failed to address this argument concerning a court's inherent authority in his Response and therefore waived a response to the argument. DE 41 at 1. Traynor cites *Ortega Trujillo v. Conover & Co. Communications, Inc.* as authority for the existence of a court's inherent authority to stay a case. DE 30 at 3. In *Ortega Trujillo*, the Eleventh Circuit Court of Appeals stated that a "variety of circumstances may justify a district court stay pending the resolution of a related case in another court." 221 F.3d 1262, 1264-65 (11th Cir. 2000) (vacating a district court's stay that was indefinite without justification and therefore an abuse of discretion).

3

As for the "circumstances" that may justify a stay, the Eleventh Circuit listed "controlling the district court's docket and . . . managing cases before the district court" and "principles of abstention." *Id.* at 1264. Traynor does not move to have this case stayed due to a need for the federal court to properly control and manage its docket. Instead, Traynor devotes the Motion to Stay to arguing that a stay is warranted under the *Colorado River* abstention doctrine. Tucker responded on the abstention issue and did not waive a response to an argument Traynor made in the Motion to Stay.

Traynor cites a second case in his Reply, *Wilton v. Seven Falls Co.*, as standing for a proposition that federal courts have broad discretion to stay cases. DE 41 at 3. In *Wilton*, the Supreme Court addressed whether a federal court's authority to stay a declaratory judgment action is broader than its authority to stay different types of cases. 515 U.S. 277, 286 (1995) (concluding that "[d]istinct features of the Declaratory Judgment Act" justified "a standard vesting district courts with greater discretion in declaratory judgment actions than that permitted under" the *Colorado River* abstention doctrine). *Wilton* is inapposite because this case is not a declaratory judgment action. As Traynor has pointed to no justification for a stay other than under the *Colorado River* abstention doctrine, the Court proceeds to analyze that doctrine as it applies to this case.

A federal court may abstain from exercising its jurisdiction in certain circumstances where a state court is contemporaneously exercising jurisdiction. *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817-18 (1976). However, abstention should be rare. *Id.* at 813 (describing abstention as "the exception, not the rule" and "an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it"); *id.* at 817 (stating that federal courts have a "virtually unflagging obligation . . . to exercise the jurisdiction given them"); *id.* at 819 (explaining that "[o]nly the clearest of justifications" warrants abstention). The

4

pendency of a state action generally does not bar a federal proceeding concerning the same matter. *Id.* at 817.

As a threshold, *Colorado River* analysis applies only when there are "parallel" federal and state lawsuits. *Jackson-Platts v. Gen. Elec. Cap. Corp.*, 727 F.3d 1127, 1140 (11th Cir. 2013). Parallel means that the "federal and state proceedings involve substantially the same parties and substantially the same issues." *Ambrosia Coal & Constr. Co. v. Pagés Morales*, 368 F.3d 1320, 1329-30 (11th Cir. 2004) (rejecting an argument that abstention is permissible only when the federal and state cases share identical parties, issues, and requests for relief). Invoking the *Colorado River* doctrine "necessarily contemplates that the federal court will have nothing further to do in resolving any substantive part of the case" after the state litigation concludes. *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 28 (1983) (explaining that a federal court deciding to stay under *Colorado River* "presumably concludes that the parallel state-court litigation will be an adequate vehicle for the complete and prompt resolution of the issues between the parties").

Upon concluding that federal and state lawsuits are parallel, a federal court must weigh the following factors to determine whether to abstain: "(1) whether one of the courts has assumed jurisdiction over property, (2) the inconvenience of the federal forum, (3) the potential for piecemeal litigation, (4) the order in which the fora obtained jurisdiction, (5) whether state or federal law will be applied, and (6) the adequacy of the state court to protect the parties' rights." *Ambrosia Coal*, 368 F.3d at 1331. In addition to those six factors, the federal court should also consider "whether the concurrent cases involve a federal statute that evinces a policy favoring abstention" and "the vexatious or reactive nature of either the federal or the state litigation." *Id.* (quotation marks omitted).

A decision whether to abstain under *Colorado River* "does not rest on a mechanical checklist, but on a careful balancing of the important factors as they apply in a given case." *Moses H. Cone*, 460 U.S. at 16 ("The weight to be given to any one factor may vary greatly from case to case, depending on the particular setting of the case."). No one factor is determinative. *Colo. River*, 424 U.S. at 818. However, "the balance [is] heavily weighted in favor of the exercise of jurisdiction." *Moses H. Cone*, 460 U.S. at 16.

### A. Parallel Federal and State Proceedings

As the Court has already explained, the threshold consideration when determining whether to abstain under *Colorado River* is whether the federal and state proceedings are parallel. *Jackson-Platts*, 727 F.3d at 1140. Traynor does not use the word "parallel" in his briefing. However, he compares the circumstances presented in this case to *O'Dell v. Doychak* to argue that this case and the state lawsuit are similar. DE 30 at 3. Tucker contends that *O'Dell* is distinguishable and that this case and the state lawsuit are not parallel proceedings. DE 36 at 3-4.

In *O'Dell*, a plaintiff filed a complaint in federal court against several individual and entity defendants for depriving him of real property in violation of his due process and equal protection rights under the United States and Florida Constitutions. No. 606-CV-677-ORL-19KRS, 2006 WL 4509634, at *1-2 (M.D. Fla. Oct. 20, 2006). The plaintiff alleged that he and a defendant landowner had agreed that the plaintiff would pay the balance of the landowner's mortgage in exchange for the landowner executing a deed granting the property to the plaintiff and reserving a life estate for herself. *Id.*, at *1. The plaintiff further alleged that, after he paid off the landowner's mortgage, the landowner and other defendants attempted to record false deeds granting the property to an additional defendant. *Id.* The defendants had filed a lawsuit in state court to, according to the plaintiff, "deprive him of his property." *Id.*

The district court in *O'Dell sua sponte* raised the issue of *Colorado River* abstention. *Id.*, at *5. The court determined that the federal and state proceedings were parallel because (1) the parties to the two cases were substantially the same in that the plaintiff and all of the defendants in the federal case were also parties to the state lawsuit, and (2) the issues in the two cases were substantially the same in that both cases sought to resolve the validity of the plaintiff's claim of ownership of the subject property. *Id.*, at *6. The court went on to analyze the *Colorado River* factors and ultimately stayed the federal case pending a resolution of the state lawsuit. *Id.*, at *7-9.

Here, Defendants in this case are also parties to the state lawsuit. Tucker, however, is not. While two cases may be parallel even if their parties are not identical, *see Ambrosia Coal*, 368 F.3d at 1329-30, the party seeking to vindicate his rights in this case is not a party to the state lawsuit. That both Defendants happen to also be involved in other litigation does not render the parties to the two cases substantially the same. *See, e.g.*, *Flowers v. Fulton Cnty. Sch. Sys.*, 654 F. App'x 396, 399 (11th Cir. 2016) (concluding that parties to federal and state cases were not substantially the same and affirming a district court's refusal to abstain where the federal plaintiff was "not a party to, nor d[id] he appear to have any connection with, the state action"). This case is distinguishable from *O'Dell*, where the individuals claiming ownership of the property at issue were parties to both the federal and state cases.

Further, the issues in this case and the state lawsuit are not substantially the same. At issue in this case is Defendants' alleged breach of the Secured Promissory Note by defaulting on the loan from Tucker. As the state Amended Complaint is pled, this issue will not be resolved in the state lawsuit. At issue in the state lawsuit is LoRusso's alleged improper takeover of Blackfisk Marine from Traynor. As the federal Complaint is pled, this issue will not be resolved in this case. This case is distinguishable from *O'Dell*, where the central issue in both the federal and state cases was the ownership of the same property.

The threshold requirement for *Colorado River* abstention—that the federal and state lawsuits be parallel—is not met. However, even were one to disagree with this conclusion, an evaluation of the *Colorado River* factors demonstrates that abstention is inappropriate in this case. *See Jackson-Platts*, 727 F.3d at 1140-41 (concluding that, even if one assumed that two proceedings were parallel, analysis of the *Colorado River* factors showed that the district court abused its discretion by abstaining). The Court now turns to those factors.

### B. The *Colorado River* Factors

The first factor for a court to evaluate when considering *Colorado River* abstention is whether one of the courts has assumed jurisdiction over the property at issue. *Ambrosia Coal*, 368 F.3d at 1331. Traynor argues that possession of some of the same RIBs is at issue in both this case and the state lawsuit and that the state court has *in rem* jurisdiction over those RIBs due to Traynor filing the Notice of *Lis Pendens* in the state lawsuit. DE 30 at 3. Tucker asserts in his Response that the specific RIBs at issue as collateral in this case are not the subject of the dispute in state court. DE 36 at 1, 3-6.

The first *Colorado River* factor applies only when there is a proceeding *in rem*. *Jackson-Platts*, 727 F.3d at 1142. Replevin under Florida law is a possessory claim that Florida courts have concluded is an *in rem* action. *Prou v. Giarla*, 62 F. Supp. 3d 1365, 1378 (S.D. Fla. 2014). "Jurisdiction over property *in rem* 'attaches upon the filing of the bill of complaint in court, at least where process subsequently issues in due course.'" *Rockwood Specialties, LLC v. Prime Invs. & Devs., LLC*, No. 16-23920-CIV, 2017 WL 7792709, at *3 (S.D. Fla. Nov. 29, 2017) (quoting *Penn Gen. Cas. Co. v. Commonwealth of Pa. ex rel. Schnader*, 294 U.S. 189, 196 (1935)).

The operative Complaints in both this case and the state lawsuit raise replevin claims. The Court's comparison of the serial numbers of the 12 RIBs at issue in this case [*see* DE 11-3] with the serial numbers of the various boats at issue in the state lawsuit [*see* DE 30-1 ¶ 57] reveals that

8

Tucker is incorrect in asserting that there is no overlap between the boats at issue in the two proceedings. Possession of four of the RIBs (those with serial numbers ALF36M07D222, ALF36M10D222, ALF39H07D222, and ALF39H09D22) is being disputed in both cases.[2] However, the Complaint in this case was filed before the state Complaint. Traynor cites no authority that supports his proposition that the state court assumed jurisdiction over those four RIBs first simply by Traynor filing a Notice of *Lis Pendens*. In any event, even if the state court assumed jurisdiction over the four RIBs first, the majority of the RIBs at issue in this case are not also at issue in the state lawsuit. This factor does not favor abstention and a stay of the entire case when two-thirds of the RIBs in dispute in this case are not the subject of dispute in the state lawsuit.

Traynor contends in his Reply that "there is a potential jurisdictional issue" in this case because the 12 RIBs (1) are not in his possession, and (2) may not be located within the State of Florida. DE 41 at 2. First, Tucker raised the claim for replevin in the federal Complaint (Count IV) against Blackfisk Marine alone, not against Traynor. Second, neither the federal court nor the state court may have *in rem* jurisdiction over the RIBs if they are not located in Florida. *See Ctr. Cap. Corp. v. Gulfstream Crane, LLC*, No. 09-61021-CIV, 2009 WL 4909430, at *6 (S.D. Fla. Nov. 25, 2009) (stating that an action for replevin under Florida law "'cannot be successfully maintained unless the property is within the state and subject to the jurisdiction of its courts'" (emphasis omitted) (quoting *Prestige Rent-A-Car, Inc. v. Advantage Car Rental & Sales, Inc.*, 656 So. 2d 541, 544 (Fla. 5th Dist. Ct. App. 1995))). The "potential jurisdictional issue" that Traynor raises does not counsel in favor of abstention.

---

[2] The Court inquired on this issue during a hearing on January 11, 2023. Tucker's counsel explained that, upon his review of the serial numbers, it appeared that none of the RIBs at issue in this case were also at issue in the state lawsuit. Counsel stated that he apologized if he was mistaken and if some of the serial numbers of the RIBs at issue in each case were the same.

The second factor for a court to consider under *Colorado River* is the inconvenience of the federal forum. *Ambrosia Coal*, 368 F.3d at 1331. Addressing this factor, Traynor maintains that litigating in federal court will be more expensive than litigating in state court and therefore more inconvenient. DE 30 at 4. Traynor further maintains in the Motion to Stay that proceeding with this case while the ownership of Blackfisk Marine is unresolved and while two attorneys are purporting to represent Blackfisk Marine will be inconvenient.[3] *Id.* Tucker responds that the federal forum is not inconvenient, as the federal court has jurisdiction to decide this case and as the RIBs at issue are located within this District. DE 36 at 5.

The second *Colorado River* factor "should focus primarily on the physical proximity of the federal forum to the evidence and witnesses." *Ambrosia Coal*, 368 F.3d at 1332. Because both the federal and state courts are located in Broward County, the courts' proximity to the evidence and witnesses is similar. This factor does not favor abstention.

The third *Colorado River* factor is the potential for piecemeal litigation. *Id.* at 1331. Traynor contends that abstention will avoid piecemeal litigation because, according to him, if the state lawsuit is resolved in his favor and he is awarded ownership of Blackfisk Marine, he will either repay Tucker's loan or give Tucker the collateral, resolving this case and avoiding unnecessary litigation. DE 30 at 4. Tucker argues that the state lawsuit will not resolve this case because, regardless of who may be deemed Blackfisk Marine's rightful owner, Blackfisk Marine will still be indebted to Tucker. DE 36 at 6.

The piecemeal-litigation factor does not favor abstention in every case with a parallel state proceeding, but rather favors abstention only if "the circumstances enveloping th[e] cases will likely lead to piecemeal litigation that is abnormally excessive or deleterious." *Ambrosia Coal*, 368 F.3d at 1333. A likelihood that there will be "some unremarkable repetition of efforts" and

---

[3] As the Court explained in Footnote 1 above, the issue of Blackfisk Marine's dual representation has since resolved.

"some piece-by-piece decision making" does not justify abstention. *Id.*; *see also Jackson-Platts*, 727 F.3d at 1142 (explaining that "[r]un of the mill piecemeal litigation will not do").

The federal court's exercise of jurisdiction while the state lawsuit is pending will not result in abnormally excessive or deleterious piecemeal litigation because, as the Court has already discussed above, the party seeking to vindicate his rights in this case by enforcing the loan documents is not also doing so in the state lawsuit, and the central issues in the federal and state cases are not the same. While Traynor makes a representation in the Motion to Stay about what he intends to do (resolve this case by repaying the loan or releasing the collateral) if he is successful in the state lawsuit, he has not prevailed in the state lawsuit. Further, he provides no authority to demonstrate that, even if he were to prevail in the state lawsuit, the representation that he has made in motion briefing would be binding. This factor does not favor abstention.

The fourth factor for a court to consider under *Colorado River* analysis is the order in which the fora obtained jurisdiction. *Ambrosia Coal*, 368 F.3d at 1331. Traynor maintains that, although the filing of the federal Complaint predated the filing of the state Complaint, both cases are newly commenced. DE 30 at 4. Traynor also asserts that Tucker "rushed to federal court" and filed this lawsuit upon learning about the dispute that would be filed in state court. *Id.* Tucker contends that this case was filed first and has progressed further than the state lawsuit because substantive motions have briefed in this case, whereas in the state lawsuit no such motions are filed and Blackfisk Marine has yet to respond to the operative Complaint. DE 36 at 6.

This factor "should not be measured exclusively by which complaint was filed first but rather in terms of how much progress has been made in the two actions." *Moses H. Cone*, 460 U.S. at 21; *see Am. Bankers Ins. Co. of Fla. v. First State Ins. Co.*, 891 F.2d 882, 885 (11th Cir. 1990) (evaluating this *Colorado River* factor by considering whether discovery had been conducted or substantive motions had been filed in the federal and state proceedings). Under this factor, a court

11

may also consider "whether the party availing itself of the federal forum should have acted earlier." *Jackson-Platts*, 727 F.3d at 1142 (quotation marks omitted).

Tucker's filing of the federal Complaint preceded the state Complaint, and this case has progressed further than the state lawsuit. The parties have filed and fully briefed four substantive motions in this case (a Motion seeking prejudgment replevin, two Motions to Dismiss, and this Motion to Stay). *See* DE 12, 21, 30, and 35. Further, this Court recently held an *ex parte* hearing and issued a Report and Recommendation on Tucker's Expedited Motion for a Temporary Restraining Order, the District Court issued a Temporary Restraining Order, and the parties are in the process of preparing for a preliminary injunction hearing. *See* DE 53, 58, 60, and 62. No such substantive motions are filed and no such substantive proceedings have occurred in the state lawsuit. Moreover, given that the dispute in this case arose at the end of September 2022, when the loan was due to be repaid, it cannot be said that Tucker should have filed the federal Complaint earlier than he did so in October. This factor does not favor abstention.

The fifth factor for a court to evaluate when considering *Colorado River* abstention is whether state or federal law will apply. *Ambrosia Coal*, 368 F.3d at 1331. Traynor points out that the federal and state cases both involve state-law claims to which state law applies. DE 30 at 4. Tucker acknowledges that state law applies in both cases but asserts that the federal court has the authority to adjudicate issues of state law under its diversity jurisdiction. DE 36 at 7.

The fifth *Colorado River* factor does not favor abstention in every instance where state law applies, but "only where the applicable state law is particularly complex or best left for state courts to resolve." *Jackson-Platts*, 727 F.3d at 1143; *see also Am. Bankers Ins.*, 891 F.2d at 886 (explaining that the presence of a state law issue weighs in favor of abstention "[o]nly in rare circumstances" (quotation marks omitted)). Further, a lack of a federal issue in the federal case does not weigh in favor of abstention. *Am. Bankers Ins.*, 891 F.2d at 886.

This case involves state-law claims, but no party contends that the state law at issue will be particularly complex or that there is otherwise some reason to leave a state-law issue to the state court. It is common for federal courts to address state breach-of-contract law such as the law that will apply in this case. *See, e.g.*, *Barone v. Wells Fargo Bank, N.A.*, 709 F. App'x 943, 951 (11th Cir. 2017) (analyzing this *Colorado River* factor and explaining that "[f]ederal courts routinely address state-law claims such as Barone's, which include breach of contract, breach of fiduciary duty, defamation, and fraud"). This factor does not favor abstention.

As the sixth *Colorado River* factor, a court should consider the adequacy of the state court to protect the parties' rights. *Ambrosia Coal*, 368 F.3d at 1331. Traynor argues that the state court will adequately protect Tucker's rights because, if he is awarded ownership of Blackfisk Marine, he will either repay Tucker's loan or give Tucker the collateral. DE 30 at 4. Traynor also argues that, if Tucker does not believe his rights will be adequately protected in the state lawsuit, he can intervene in that lawsuit. *Id.* Tucker responds that the state lawsuit will not adequately protect his rights because he is not a party to the lawsuit and should not be compelled to intervene in an ownership dispute that is unrelated to Defendants' default on his loan. DE 36 at 7.

This sixth factor favors abstention only if the federal forum is inadequate to protect a party's rights. *Noonan S., Inc. v. Cnty. of Volusia*, 841 F.2d 380, 383 (11th Cir. 1988). The factor is neutral when both fora are adequate to protect the parties' rights. *Am. Bankers Ins.*, 891 F.2d at 886.

The parties do not contend that this federal forum is inadequate to protect their rights. On the other hand, the state forum may be inadequate to protect Tucker's rights because he is not a party to the state lawsuit. Because Tucker's loan does not form the basis of any claim in the state lawsuit, the state court could deny him leave to intervene. *See* Fla. R. Civ. P. 1.230 (providing that "[a]nyone claiming an interest in pending litigation may at any time be permitted to assert a

13

right by intervention"). In any event, Tucker has not been permitted to intervene in the state lawsuit to date. Further, as the Court has already discussed, Traynor has not demonstrated that his representation in the Motion to Stay about what he intends to do if he is successful in the state lawsuit is binding, and he has yet to prevail in that lawsuit. This factor does not favor abstention.

In addition to the six factors that the Court has analyzed thus far, two additional considerations may be relevant to a court's decision whether to abstain under *Colorado River*. The court should evaluate whether there is a federal statute at issue that evinces a policy favoring abstention and whether the federal or state litigation is vexatious or reactive. *Ambrosia Coal*, 368 F.3d at 1331. The parties do not address the first consideration, and at this juncture there is no indication that there is any relevant federal statute reflecting a policy favoring abstention. Tucker also does not address vexatious or reactive litigation, while Traynor asserts that the filing of this case was vexatious and reactive because Tucker had advance knowledge of the lawsuit that would be filed in state court. DE 30 at 4.

When evaluating whether litigation is vexatious or reactive, a court may consider whether a party engaged in forum shopping. *Sini v. Citibank, N.A.*, 990 F. Supp. 2d 1370, 1376 (S.D. Fla. 2014). A court may also consider whether the plaintiff filed in federal court in reaction to a failure in state court. *Freeman v. Wells Fargo Bank, N.A.*, No. 19-CV-80670, 2019 WL 13147405, at *5 (S.D. Fla. Dec. 12, 2019).

There is no concern about forum shopping here. Tucker filed this case under federal diversity jurisdiction (the existence of which no Defendant has contested) in the division of this District where Blackfisk Marine's place of business is located. Nor is there a concern that Tucker filed this case in reaction to an unfavorable decision or judgment from a different court. That Tucker may have had advance knowledge that a state filing was imminent does not render his filing of the federal Complaint vexatious or reactive. He is not a party to the state lawsuit, and

there is no claim in that lawsuit that seeks to enforce his loan documents. It was not vexatious or reactive for Tucker to file a separate lawsuit to enforce those documents or for him to do so in federal court under diversity jurisdiction.

In sum, even if the federal and state cases were considered parallel proceedings, none of the *Colorado River* factors favor abstention, much less do they overcome a balance that is to be heavily weighted in favor of a federal court exercising its jurisdiction. *See Moses H. Cone*, 460 U.S. at 16. The Court therefore recommends that the Motion to Stay be denied.

### III.  CONCLUSION

For the foregoing reasons, the Court **RECOMMENDS** that the Motion to Stay Pending Outcome of Ownership of Blackfisk Marine, LLC Which is Pending in State Court [DE 30] be **DENIED**.

Within fourteen days after being served with a copy of this Report and Recommendation, any party may serve and file written objections to any of the above findings and recommendations. 28 U.S.C. § 636(b)(1); S.D. Fla. Mag. R. 4(a). The parties are hereby notified that a failure to timely object waives the right to challenge on appeal the District Court's order based on unobjected-to factual and legal conclusions contained in this Report and Recommendation. 11th Cir. R. 3-1 (2014).

**DONE AND SUBMITTED** in Chambers at Fort Lauderdale, Florida, this 12th day of January, 2023.

_____
PANAYOTTA AUGUSTIN-BIRCH
UNITED STATES MAGISTRATE JUDGE